WILLINGHAM LOAN AND TRUST COMPANY *v.* MOORE;
*et vice versa.*

1-3. The instructions to the jury on the issue as to whether the plaintiff's claim of title based on prescription was a marketable title were not erroneous, as contended in the exceptions, for the specified errors of commission and omission.

4-5. The instruction on the burden of proof of adverse possession under color of title was not erroneous on the grounds alleged. The doctrine of shifting that burden was not applicable.

6. The evidence on the issue of fact as to marketability of title was sufficient to support the verdict.

7-8. As to amount of recovery the verdict was demanded. It was not error to overrule the motion for new trial.

Nos. 5423, 5442. FEBRUARY 16, 1927.

Action for specific performance. Before Judge Graham. Bleckley superior court. April 23, 1926.

Willingham Loan & Trust Company instituted an action, on August 14, 1922, against W. H. Peacock, J. P. Peacock, and W. L. Moore. The petition alleged, in paragraph 2, that the plaintiff sold to defendants certain real·property under terms and conditions of purchase as set forth in a written instrument between the parties, which was accepted in writing by W. L. Moore

Adverse Possession, 2 C. J. p. 276, n. 59.
Specific Performance, 36 Cyc. p. 788, n. 32.
Vendor and Purchaser, 39 Cyc. p. 788, n. 32; p. 1442, n. 82; p. 1452, n. 49; p. 1456, n. 55; p. 1460, n. 72; p. 1462, n. 74.

for himself and his associates, he being authorized so to do by them. The following was alleged to be a copy of the contract:

"Macon, Georgia, May 6, 1920.

"Received of J. P. & W. H. Peacock & W. L. Moore One Thousand Dollars ($1000.00), being part payment for Adams property on Broadway, now occupied by Peerless Paint Company, warehouse in rear of same and sheet metal warehouse occupied by Merritt Company. It is understood and agreed that the brick walls on the north and east sides dividing this property from the property occupied by the Ford people is a party wall. Consideration being $35,000.00, terms as follows: $4,000.00 to be paid October first, 1920, and then on first of each October thereafter for six years $5,000.00 is to be paid. All notes bearing interest from October 1st, 1920, at 7%, payable semi-annually. Taxes and insurance to be prorated from October 1st, 1920. Deed subject to examination.

"Willingham Loan & Trust Co. By C. B. Willingham, Jr., Agts.

"Accepted: W. L. Moore."

Other allegations were to the effect that on May 27, 1920, in pursuance of the agreement the petitioner tendered to the defendants a deed to the property in the usual form, with general warranty of title; also purchase-money notes and a security deed to plaintiff, for execution by the defendants; that plaintiff is ready, willing, and able to comply with its said agreement, but that the defendants refuse to accept the tender and to carry out the terms of the agreement. The prayers were, (a) for specific performance, (b) for judgment against defendants for $9,000 and interest from October 1, 1920, and for general relief. W. L. Moore filed an answer the second paragraph of which was as follows: "Paragraph two of plaintiff's petition is denied, except the fact that he signed the contract set out in said paragraph, and paid to the Willingham Loan & Trust Company the sum of $1000.00 thereon as part of the purchase-price of said real estate, which $1000.00 this defendant is entitled to have and receive a judgment against the plaintiff therefor, as will more fully appear from the facts hereinafter set forth." This paragraph was amended by striking the words, "except the fact that he signed the contract set out in said paragraph," and inserting in lieu thereof the following: "ex-

cept the fact that he signed a contract, of which plaintiff's petition sets out a true and correct copy, with the exception of the heading, said copy of the contract set out in said petition purporting to be headed 'Macon, Georgia,' and this defendant shows that the original contract signed by him was not headed 'Macon, Georgia,' and for this reason defendant denies executing a contract with plaintiff headed 'Macon, Georgia.' Aside from this fact, the contract represents a true and correct copy of the contract executed by this defendant." The answer denied other allegations of the petition, and set up that the contract was made subject to approval of counsel for defendants, and that upon examination by defendants' counsel it developed that plaintiff did not have title to any part of the land and could not deliver the same; and that, defendant having paid to the plaintiff the sum of $1000, defendant was entitled to a judgment against plaintiff for said sum with interest, on account of plaintiff's inability and refusal to deliver the title to the property. At the trial a nonsuit was granted as to W. H. and J. P. Peacock, and they were eliminated from the case. The trial proceeded against W. L. Moore. The jury returned a verdict for the defendant generally, and for $1000 principal, with interest as prayed for in the answer. The plaintiff made a motion for a new trial, which was overruled, and it excepted. The defendant filed a cross-bill of exceptions.

*Jones, Park & Johnston,* for plaintiff.

*O. C. Hancock* and *J. M. Hancock,* for defendant.

ATKINSON, J. 1. This is a suit for specific performance of a contract for the sale of land. An issue was involved as to whether plaintiff's claim of title based on prescription was a marketable title. The judge charged the jury: "A marketable title is one which a reasonable purchaser, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear in such transactions, be willing and ought to accept." This charge was not erroneous on the ground, as alleged, that "it did not instruct the jury as to the legal points upon which a reasonable purchaser should be well informed, and which the jury should consider in determining whether or not a prudent person would be justified in declining to accept the prescriptive title."

2. In connection with the charge just quoted it was not error, as contended, to fail "to instruct the jury as to what facts and their legal bearings, a reasonable purchaser, willing and anxious to perform his contract, should be well informed upon in determining whether he should be willing and ought to accept the title tendered."

3. The judge charged: "A title arising by prescription is a good and marketable title, provided it clearly appears that the entry of the real owner is barred." This was not erroneous, as contended, on the grounds (a) that "it contains an intimation on the part of the court that there was some person claiming adversely to the title tendered by the movant to the defendant, and in whom an outstanding title of record had been shown;" (b) that "it contains an intimation on the part of the court that E. M. Adams, whose deed and title movant tendered to the defendant, was not the real owner and had no other claim to the property in controversy than his claim of prescriptive title;" (c) that "it placed on the movant the burden of controverting something which had not been shown by any evidence to exist, i. e., a real owner other than E. M. Adams, in whom an outstanding record title was vested."

4. The judge charged the jury as follows: "The burden of proof rests with the plaintiff to prove its case by a preponderance of the evidence in the case. . . Now, while the burden rests with the plaintiff to prove its case by a preponderance of the evidence only, yet, in respect to adverse possession under color of title, the burden is on the plaintiff to prove such adverse possession under color of title as to leave no reasonable doubt as to the nature and duration of such possession and the title acquired thereby." The case being one for specific performance, the latter sentence of this charge was not erroneous as against the plaintiff, on the grounds alleged: (a) "that it placed all the burden of proof on the plaintiff, when, as a matter of law, the only burden resting on the plaintiff is to show seven years adverse possession under color of title, and the burden would thereupon be upon the defendant to show that some reasonable doubt existed as to the nature and duration of such possession and the title acquired thereby; especially under the evidence in this case, . . in that there is no conflict whatever as to the nature and duration of the

possession and the title tendered by movant, but on the contrary the undisputed evidence shows that W. M. Adams [E. M. Adams?], whose title movant tendered, had public, continuous, exclusive, uninterrupted, and peaceable possession of the property for over seven years under a warranty deed purporting to convey all the property in controversy;" (b) that "it placed on the plaintiff a heavier burden than is imposed by law, in that it required the plaintiff to establish its contention beyond a reasonable doubt, whereas the law only requires a plaintiff in a civil case to establish his contention by a preponderance of the evidence."

5. The doctrine of "shifting the burden of proof" was not applicable. *Mobley* v. *Lyon,* 134 *Ga.* 125 (67 S. E. 668, 137 Am. St. R. 213, 19 Ann. Cas. 1004). The charge quoted in the last paragraph was not erroneous on the alleged grounds: (a) that "it failed to instruct the jury when the burden would shift to the defendant;" (b) that "it failed to instruct the jury that if the plaintiff made out a prima facie case, the burden of proof would thereupon shift to the defendant;" (c) that "the court failed to go further and instruct the jury that if they believed the plaintiff had shown by a preponderance of evidence that E. M. Adams, whose title and deed to the property in controversy movant tendered to defendant, was in adverse possession of the property under a duly recorded deed, and had been continuously in such possession for more than seven years prior to the date of the transaction between movant and defendant, movant would have successfully carried the burden of proof imposed upon it, and the burden would then shift to the defendant, and the burden be upon the defendant to establish by a preponderance of evidence some reasonable objection to Adams' title, or some valid claim outstanding in some third party, which a reasonably prudent man, well informed as to the facts and their legal bearings, willing and anxious to perform his contract, would, in the exercise of that prudence which business men ordinarily bring to bear in such transactions, make to the marketability of the title;" (d) that "it placed on the plaintiff a heavier burden than is imposed by law, in that it required the plaintiff to establish its contention beyond a reasonable doubt, whereas the law only requires a plaintiff in a civil case to establish his contention by a preponderance of the evidence.

6. It was held on the former trial of this case (*Willingham Loan & Trust Co.* v. *Moore*, 160 *Ga.* 550 (2), 128 S. E. 751): "The contract of purchase and sale does not define the kind of title the purchaser was to receive; it merely stipulates: 'Deed subject to examination.' A good and marketable title was all that the purchaser could insist upon. And whether the prescriptive title, shown by the evidence introduced by the plaintiff, measured up to the test of marketability was, under the evidence, a question for the jury." On the next trial the question which was held to be one that should have been submitted to the jury was so submitted. The evidence on that question was sufficient to support the verdict for the defendant.

7. The judge directed a verdict for the defendant, in so far as it related to recovery of $1000 principal, with interest as set up in the answer. This direction was not erroneous on the grounds, as contended: "It undisputedly appeared on the trial of said case that the plaintiff entered into said contract in good faith, and tendered to the defendant, W. L. Moore, a good and marketable title, in accordance with the terms of said contract; and said contract not being void against public policy, and not being an illegal contract, the defendant was not entitled to recover back money paid thereunder, until a breach of the said contract on the part of the plaintiff had been shown."

8. Under the pleadings and evidence the judge did not err in overruling the motion for a new trial.

*Judgment affirmed on the main bill of exceptions. Cross-bill of exceptions dismissed. All the Justices concur.*

GILBERT, J., concurs in the result.